

**U.S. Department of Justice**

**Tax Division**
*Northern Criminal Enforcement Section*

DAH:AC/SN
F. #2019R01326
DJ 2021200256
CMN 5-52-20533

*P.O. Box 972*
*Washington, D.C. 20044*

March 3, 2022

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Steven J. Kwestel
                  Criminal Docket No. 20-556 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in connection with the sentencing in the above-captioned case, which is scheduled for March 10, 2022. For seven years, Steven Kwestel (Kwestel) intentionally abused the trust the government and his employees placed upon him to withhold and pay over payroll taxes on behalf of his employees. Every year, Kwestel withheld those taxes from his employees' paychecks but retained the money for his own personal benefit. Kwestel's actions caused a tax loss exceeding one million dollars. His attempts to game the system were unfair to law-abiding taxpayers and warrant a sentence within the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 24-30 months' imprisonment.

      I.     Background

      The offense conduct is set forth in paragraphs three through eight of the Presentence Report (PSR). Kwestel owned and operated Courtesy Transportation, a corporation located in Brooklyn, New York, that provided ambulance services. As the person who exercised control over Courtesy Transportation's financial and business operations, Kwestel had the corporate responsibility to collect, truthfully account for, and pay over Courtesy Transportation's payroll taxes to the Internal Revenue Services (IRS).

      Between January 1, 2013 and December 31, 2019, Kwestel failed to pay over to the IRS approximately $1,302,841 in taxes owed, including approximately $894,685 in payroll taxes withheld from the wages paid to the employees of Courtesy Transportation and approximately $408,156 in FICA taxes owed by Courtesy Transportation. During this period, Kwestel failed to make full payment of payroll taxes due to the IRS and used corporate funds

to make hundreds of thousands of dollars of expenditures for his and his family's personal benefit.

On July 20, 2021, pursuant to a plea agreement with the United States (the "Plea Agreement"), Kwestel pleaded guilty to a one-count Information charging him with willful failure to collect, truthfully account for, and pay over to the IRS federal income taxes and FICA taxes, in violation of 26 U.S.C. § 7202. PSR ¶ 1.

Based on the factors set forth in 18 U.S.C. § 3553(a), and the Guidelines, the government requests that the Court sentence the defendant to a term of incarceration within the guidelines range of 24-30 months, as determined by the stipulations in the Plea Agreement and the findings in the PSR, followed by a period of supervised release. Additionally, the government requests that the defendant be ordered to pay $1,274,745 in restitution to the IRS, as agreed by the parties in the Plea Agreement.

## II. Guidelines Calculations

Even though the Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005).

The government agrees with the Guidelines calculation set forth in the PSR, which is included below:

| | |
|---|---:|
| Base Offense Level (based on Tax Loss of $1,302,841): (U.S.S.G.§§2T1.6(a), 2T4.1(H)(Tax loss between $550,000 and $1.5 million)) | 20 |
| Acceptance of Responsibility: (U.S.S.G§ 3E1.1(a)) | -2 |
| Acceptance of Responsibility: (U.S.S.G.§ 3E1.1(b)) | <u>-1</u> |
| Total: | <u>17</u> |

PSR¶ ¶ 14-23. As Kwestel has no prior criminal history, his criminal history category is I. A total offense level of 17 and a criminal history category of I corresponds to a Guidelines range of 24-30 months.

## III. Analysis

In addition to the Guidelines, the Court must consider the other factors set forth in 18 U.S.C. § 3553(a). For this case, a sentence within the range advised by the Guidelines appropriately considers the nature and circumstances of the offense; the history and characteristics of the defendant; reflects the seriousness of the offense, promotes respect for

2

the law, and provides just punishment for the offense; protects the public from further crimes by the defendant; affords adequate deterrence; is consistent with the Sentencing Commission's policy statements on the need for deterrence in tax crimes; and is no greater than necessary to accomplish these purposes. 18 U.S.C. § 3553(a)(1), (2), (5), (6). Specifically, the Court should sentence the defendant to a term of imprisonment for the following reasons:

### A. Nature, Circumstances, and Seriousness of the Offense

Since being promulgated in 1987, the Sentencing Guidelines have recognized tax crimes as serious offenses that cause serious harm. U.S.S.G. § 2T1.1, cmt. (backg'd). These cases negatively impact the government's ability to fund vital initiatives for those in most need.

Kwestel's crime was egregious and longstanding. By law, Kwestel was required to withhold federal income, Social Security, and Medicare taxes from the wages of his employees, report these amounts on IRS tax forms, and then pay them over the government when due.

For seven years, Kwestel deducted from his employees' wages the employment taxes he was required to withhold. Every pay period, his employees' salaries were reduced by the amount of taxes he withheld. However, instead of paying those funds to the IRS, as he had been *entrusted* to do by the government and his employees, he pocketed the money and spent it on personal expenses that benefitted him and his family.

In his sentencing letter, Kwestel misrepresents his conduct as a "mistake" and distinguishes himself from "large-scale fraudsters." (ECF No. 21, p.7). A "mistake" or lapse of judgment happens once. Kwestel deliberately and willfully ignored his responsibilities as an employer and defrauded the government over and over again. For seven years, multiple times a year, Kwestel filed with the IRS Forms 941, Employer's Quarterly Federal Tax Returns, that reported the amount of taxes he owed. (ECF No. 5, ¶ 7). Every time, he disregarded his obligations by prioritizing other payments, including personal expenditures. During the seven years in question, Kwestel made merely four payments that totaled less than $33,000. Additionally, the tax loss Kwestel caused with his fraudulent conduct was not minimal, exceeding $1.3 million.

### B. History and Characteristics of Defendant

Kwestel's history and characteristics do not mitigate the crime. He is a sophisticated and intelligent individual. He is an attorney with a savvy understanding of finances that is required to operate a company that reports over a million dollars in gross receipts each year. Kwestel also comes from a stable family environment that provided, and continues to provide him, the support to obtain a higher education and become successful. As Judge Posner stated in *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999),

Business criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity …Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

Kwestel could have enjoyed a comfortable lifestyle while attending to his tax obligations. As he admitted, the IRS attempted to resolve these issues early on and through civil collection proceedings. (*See* ECF No. 21, p. 4). However, Kwestel chose a path of greed, and despite the IRS efforts, continued with his criminal conduct, in part through the diversion of business funds for his personal use. He presents himself as a "committed family man." (ECF No. 21, p. 1). He may be – and indeed, he has protected the interests of his family above all else. In considering this factor, it is important to note that the defendant deprived not only his employees, but also people in need—people whom the government has designated as worthy recipients of Medicaid and disability benefits, for example—in order to privilege himself and his family.

C. *Need to Promote Respect for the Law and Afford Adequate Deterrence*

Kwestel's actions over a seven-year period exhibit his lack of respect for the nation's tax laws. The federal tax system relies on the honesty and cooperation of all its citizens; failure to pay one's tax obligations puts additional burdens on every other taxpaying citizen. Every tax dollar not collected is money that cannot be used for the myriad funding obligations of the federal government. For example, $1.3 million could have covered federal reimbursements for over 385,000 free school lunches.[1]

Although Kwestel pleaded guilty, he blames his circumstances—including previous sellers "cook[ing] the books to conceal a massive fraud" and expenses exceeding revenue and choosing to pay vendors and workers—rather than taking responsibility for his actions. (ECF No. 21, pp. 2-3).

Kwestel is an attorney. He, more than others, should have respect for and commitment to the laws of the United States, including the tax laws. As a lawyer, he was well aware that there are avenues to deal with business disputes besides committing tax fraud. Moreover, Kwestel's characterization of his fraudulent conduct is misleading. Kwestel not only prioritized the success of his business over his legal obligations, but he also made

---

[1] *See* National School Lunch, Special Milk, and School Breakfast Programs, National Average Payments/Maximum Reimbursement Rates, 83 Fed. Reg. 34105, 34107-08 (July 19, 2018). The number of school lunches listed above is based on a federal reimbursement amount of $3.31 per lunch. *See id*. at 34107. This rate applies to schools in the contiguous U.S. where less than 60% of the lunches served in the 2016-2017 year were free or reduced-price lunches. *See id*. at 34107.

sure that he and his family's comfort came first by diverting funds to their benefit. His conduct is egregious because it was done at the expense of his own employees, the government, and law-abiding citizens who comply with their tax obligations despite having to face difficult or unforeseen circumstances.

Even after pleading guilty, Kwestel continues to violate the law. He misrepresents his level of cooperation by asserting that he has provided all documents and information. However, as stated in the PSR, Kwestel is yet to provide a completed Personal Financial Statement (PFS) to verify the specifics of his financial condition, which is in violation of 18 U.S.C. § 3664(d)(3). ¶¶ 53 and 57. Kwestel admitted he did not provide the financial statements to his attorney until "more than a month ago," even though he pleaded guilty since July 2021. (ECF No. 21, p.3). As a result, the government has been unable to review or challenge Kwestel's representation of his finances, which is particularly relevant in this case given that it involves the diversion of funds and failure to make tax payments to the IRS.

A sentencing within the guideline range is appropriate to prevent future violations of the tax laws, particularly for an employer entrusted with the duty to account for and pay over trust fund taxes. A sentence below the guidelines would send a message to the defendant that his conduct was not serious, that the tax laws of the United States are not as important, and that violating those laws is inconsequential.

In addition to the need for specific deterrence, the need for general deterrence in this case similarly warrants a strong sentence. In some sense, the need for deterrence in tax fraud sentences—more so than perhaps other crimes—is apparent from the relevant numbers: the number of taxpayers in the United States far exceeds the number of auditors and criminal investigators available at the IRS. The Guidelines recognize this dynamic:

> Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would be violators.

U.S.S.G. ch. 2, pt. T, introductory cmt.

Conduct such as Kwestel's undermines the trust that is essential to the proper functioning of our revenue laws. His actions forced other community members to carry an extra burden to fund the work of the government. This case presents a powerful need and opportunity for this Court to deter similar conduct. Absent such deterrence, other business owners with similar business models will see the result in this case and cynically conclude that the risks of being caught and punished for this type of tax fraud do not outweigh the potential rewards. Deterrence is thus critical not only to ensure that a particular individual pays the taxes that the individual owes, but also to ensure that others continue to be honest taxpayers.

>    D.   *Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct*

Generally, the need to avoid unwarranted sentence disparities weighs in favor of imposing a sentence within the advisory guidelines range. The criminal tax provisions of the Guidelines were established explicitly in part "to reduce disparity in sentencing for tax offenses." U.S.S.G. §2T1.1 cmt. background; *see also* 28 U.S.C. § 991(b)(1)(B) (purposes of U.S. Sentencing Guidelines). And as the Supreme Court stated, "[f]or even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007) (referencing *Rita v. United States*, 551 U.S. 338, 349-350 (2007)).

Contrary to Kwestel's argument, his payment of restitution should not dissuade the Court from a sentence of incarceration.[2] "Restitution is desirable but so is the deterrence of white-collar crime" and "the minimization of discrepancies between white- and blue-collar offenses . . . ." *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006). Moreover, rewarding Kwestel with a departure from the Guidelines because he was fortunate to have the means to pay restitution early would create disparities in the treatment of poor defendants who do not possess the means to buy their way out of jail. Setting that precedent will not only create a vicious pattern that will reward the well-off but will also send the wrong message to that population who will only need to ensure they have funds to pay for their freedom if they are ever caught.

>    IV.   <u>Restitution and Supervised Release</u>

The Court may order restitution for Title 26 tax offenses as negotiated in a Plea Agreement. 18 U.S.C. § 3663(a)(3). Per the terms of the Plea Agreement, Kwestel agreed to pay restitution in the amount of $1,274,745. For the above-stated reasons, and as agreed to by the parties in the Plea Agreement, the government requests that the Court impose, as part of the sentence, an order of restitution to the IRS in the amount of $1,274,745, relating to the one count of willful failure to collect, account for, and pay over employment taxes. The government furthermore requests that the Court order the restitution to be payable immediately, even if the defendant must make installment payments toward the total amount.[3]

---

[2] The fact that he can pay over $1 million in restitution in advance of sentencing also raises the question why he could not have made quarterly payroll tax payments over the years. His failure to provide financial information leaves the government in the dark as to his source of assets to pay this restitution.

[3] This request is designed to protect the IRS's ability to assess and collect restitution after any period of probation or supervised release has expired.

While Kwestel has already issued payments to the IRS prior to the sentencing hearing to satisfy his restitution obligations, it is imperative that the sentence imposed by this court reflects that restitution in the amount agreed to by the parties is part of the sentence. Otherwise, Kwestel could attempt to get his money back. Once the IRS processes the payments he has made, his restitution balance will be reduced by the same amount paid.

Finally, the government requests that the Court impose a three-year term of supervised release.

V.      Conclusion

The United States relies upon the honesty of taxpayers to fund the public fisc. The defendant made a deliberate choice to take advantage of the federal tax system at the expense of the United States and of other honest taxpayers.

For the aforementioned reasons, the government recommends that this Court sentence the defendant, Steven Kwestel, to a term of imprisonment within the Sentencing Guidelines range of 24-30 months. Such a sentence is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a). The government further requests that the Court order that the defendant pay restitution to the IRS in the amount of $1,274,745, payable immediately, and orders the defendant to serve a three-year period of supervised release following incarceration.

DAVID A. HUBBERT
Tax Division
U.S. Department of Justice

By:    /s /*Anahi Cortada*
Anahi Cortada
Shawn Noud
Trial Attorneys, Tax Division
U.S. Department of Justice
(202) 616-2368
(202) 353-9215

cc:    Clerk of the Court (by ECF)
Jim Druker, Esq. (by ECF)
Jennifer Fisher, Supervisory United States Probation Officer (by E-mail)